OPINION *Page 2 
¶{1} Defendant-appellant Vaughn Rhoden appeals from his assault conviction entered after a bench trial in the Youngstown Municipal Court. On appeal, he raises issues with sufficiency and weight of the evidence. This case revolves around credibility and rational inference, and we cannot conclude that the trial court lost its way in resolving the available constructions of the evidence. Accordingly, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE ¶{2} On June 25, 2007, Felicia Cochrane filed an assault complaint against appellant and various other defendants as a result of a May 8, 2007 incident in her yard. The case proceeded as a bench trial to the court.
¶{3} Felicia testified that she and her significant other, Kenrick Little, lived at 61 Rutledge with her three children. From January to April of 2007, they allowed Mr. Little's cousin, Meta Little, and her three children to live with them. (Tr. 11). When Meta stopped contributing to the household bills, they asked her to move out. Thereafter, they placed her belongings on the porch where they were apparently stolen, causing hard feelings between the women. (Tr. 12, 14). Meta then prepared to move into the house next door to Felicia's house. (Tr. 13).
¶{4} On May 8, 2007, Meta drove by and yelled obscenities to Felicia. (Tr. 15). Ten minutes later, Meta and approximately six other cars pulled up and at least ten (but possibly up to fifteen) adults and five children alighted from the vehicles. (Tr. 16). Appellant was with this group of people, and Felicia has known him and the others for over a year. (Tr. 30).
¶{5} Felicia testified that Meta approached her while yelling about her television being stolen and threatening physical violence. (Tr. 20). According to Felicia, Meta then unexpectedly maced her in the face. Felicia then retreated to her house to wipe off her face and retrieve her cellular telephone. (Tr. 21-22). When Felicia threatened to call the police, Meta's associates began encouraging her to fight *Page 3 
Felicia. Meta then rushed at Felicia, and both women exchanged punches. (Tr. 22-23).
¶{6} According to Felicia, Meta's sister, Eboni Little, then ran up and hit her on the head until Kenrick pulled Eboni off. (Tr. 23). The fight started moving to the backyard. Then, Sherry Bevly and Jonetta McCall began hitting Felicia in the head. (Tr. 25). When Kenrick interrupted again, Tonya McCall, who is Jonetta's mother, began threatening him with a broomstick. (Tr. 26, 64).
¶{7} Felicia said that she broke away to look for her telephone when Meta rushed her again eventually causing them both to fall. (Tr. 27). At the time they fell, Felicia saw appellant Vaughn Rhoden next to her screaming by her ear, "Mia [Meta] get this bitch, get this bitch, you didn't come up here for nothing, get this bitch." (Tr. 37). Felicia stated that after she and Meta fell, appellant grabbed her by the ponytail and lifted her up from Meta, who was still holding on to her arms. (Tr. 28, 37). Then, Jonetta came running up and kicked Felicia square in the chest. (Tr. 28).
¶{8} On his return to the front yard, Kenrick witnessed the kick but did not see appellant grab Felicia's hair. (Tr. 65-66). He essentially explained that he was not paying attention to anyone else due to the horror of turning the corner to see Felicia receive that kick in the chest and crumple over. Kenrick then scooped Felicia up and carried her to a neighbor's house as she looked badly hurt. (Tr. 72).
¶{9} Felicia's cousin, who was a witness in the front yard, also testified that she saw the kick at the end of the fight. She witnessed appellant yelling encouragement to Meta, but she did not see appellant pull Felicia's hair. (Tr. 83-85, 89). These three witnesses all agreed that appellant was not holding an infant during the fight as two of his witnesses claimed. (Tr. 36, 66, 78).
¶{10} At this point in the testimony, appellant sought a Crim. R. 29 acquittal motion due to the fact that Felicia testified that appellant pulled her hair while Jonetta kicked her in the chest but the state's other two witnesses did not see appellant pull Felicia's hair even though they witnessed the kick by Jonetta. The court denied the motion.
¶{11} Appellant presented the testimony of two friends, who stated that appellant was holding an infant during the fight and that he was not involved, and the *Page 4 
testimony of two co-defendants, who also denied appellant's involvement. (Tr. 98, 126-127, 172, 218-219). Jonetta denied her own involvement as well as appellant's, and Meta testified that it was just mutual combat and that she never maced Felicia. (Tr. 156, 183, 219). Some of these witnesses stated that any movements by anyone besides Meta and Felicia were merely attempts to break up the fight.
¶{12} In rebuttal, the state called a long-time resident of the neighborhood who witnessed the fight. She confirmed that when Meta and Felicia were first talking, Felicia suddenly jumped back and quickly retreated to her house. (Tr. 228). She did not look again until the fighting had erupted at which time she witnessed many individuals swinging at and hitting Felicia. She concluded that if it were merely one on one she would have minded her own business, but since so many were jumping on Felicia, she called the police. She refuted any claims that the others were merely trying to break up the fight. (Tr. 229).
¶{13} The court found appellant guilty of assault and ordered a presentence investigation. On January 7, 2007, the court sentenced appellant to ten days in jail (to be served on weekends so he could maintain his job), thirty days electronic monitoring house arrest with work privileges, eighteen months of basic probation, a $150 fine and anger management counseling. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE ¶{14} Appellant's first assignment of error provides:
¶{15} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT/APPELLANT'S CRIMINAL RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL; ALTERNATIVELY, THE DEFENDANT/APPELLANT'S CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE AND THEREFORE MUST BE REVERSED."
¶{16} Sufficiency of the evidence is a legal test dealing with adequacy, as opposed to weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. State v.Goff *Page 5 
(1998), 82 Ohio St.3d 123, 138. In other words, the evidence is sufficient if, after construing the evidence favorably to the state, reasonable minds can reach different conclusions. State v. Carter
(1995), 72 Ohio St.3d 545, 553; State v. Bridgeman (1978),55 Ohio St.2d 261, 263. An appellate court reviews a denial of a Crim. R. 29 motion for acquittal using this same standard. Id.
¶{17} The elements of assault are knowingly causing or attempting to cause physical harm. R.C. 2903.13(A). Appellant argues here that there is no evidence that he took part in the assault, claiming that he did not pull Felicia's hair. However, this argument ignores Felicia's testimony.
¶{18} Felicia testified that appellant screamed encouragement to Meta right in her ear as she fell to the ground. Felicia looked directly at him, even noticing that he was wearing a plaid shirt. Although some testimony suggested that it was Meta's hands in Felicia's hair, other testimony established that, at the relevant point in time, Meta's hands were busy holding onto Felicia's hands or arms so that neither woman could hit each other. The force of the pull and the amount of lift encountered could allow Felicia to infer that the person standing over her screaming that she was a bitch and that Meta should keep fighting her was the same person who lifted her up by her hair (rather than to infer that the strong puller was the person on the ground under her who had a hold on her hands). Notably, Felicia had explained that the other participants were still in the back running towards them at the time. (Tr. 37).
¶{19} Regardless, Felicia specifically testified that it was appellant who grabbed her hard by the ponytail and pulled her up off of Meta, allowing a clear shot for Jonetta's kick to the chest. That the defense witnesses and the other two state's witnesses did not observe appellant's act does not make this evidence insufficient. Construing the evidence in the light most favorably to the state, some rational trier of fact could easily find that appellant's act was established beyond a reasonable doubt. As such, the evidence was sufficient to support appellant's assault conviction.
 ASSIGNMENT OF ERROR NUMBER TWO ¶{20} Appellant's second assignment of error contends:
¶{21} "THE DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 6 
 ¶{22} Weight of the evidence concerns the effect of the evidence in inducing belief. Thompkins, 78 Ohio St.3d at 387. In considering a claim that a verdict is against the manifest weight of the evidence, the reviewing court is permitted to comb the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
¶{23} Because credibility of the witnesses and weight of the evidence are questions that are primarily the province of the fact-finder, a verdict is reversed on manifest weight of the evidence grounds only in exceptional circumstances. See id.; State v. DeHass (1967),10 Ohio St.2d 230, 231. The trier of fact occupies the best position from which to observe the demeanor, gestures, and voice inflection of the witnesses. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. When there are two or more fairly reasonable views of the evidence, we do not choose which one is more believable. State v. Gore (1999), 131 Ohio App.3d 197, 201 (7th Dist.).
¶{24} Appellant downplays Felicia's testimony due to her witnesses' claims that they did not see appellant grab Felicia's hair. However, Felicia's testimony is not incredible, and it does not require our overriding of the trial court's determination of weight and credibility. The trial court could have found her to present herself as a very credible witness.
¶{25} Moreover, as for Kenrick's failure to confirm that appellant pulled Felicia's hair, Kenrick pointed out two facts: (1) he was just coming from the backyard when the kick occurred and thus did not see what happened after Felicia left the backyard and before the kick; and (2) he was so focused on the horror of the kick and its effect that he did not notice anyone else. (Tr. 65, 72). Thus, his failure to observe appellant's act is not the great deficiency in the state's case that appellant makes it out to be.
¶{26} Appellant's characterization of the testimony of Felicia's cousin is similarly flawed. Merely because she did not witness appellant's act does not mean that Felicia's testimony is incredible or that her testimony had been impeached. As the cousin pointed out, she was in the front yard, witnessed nothing that occurred in the *Page 7 
backyard and the kick (that she did witness) occurred as the participants were moving from the back to the front. (Tr.83, 89). In addition, she did confirm Felicia's testimony about appellant yelling encouragement to Meta to continue the fight. (Tr. 84).
¶{27} Two defense witnesses, who were appellant's friends, testified that appellant was holding an infant, implying he could not have participated in the fight. However, all three state's witnesses did not observe appellant holding an infant. (Tr. 36, 78, 98). Two of appellant's co-defendants testified that he was not involved. However, Jonetta, one of these co-defendants, also claimed that any actor besides Meta was merely trying to break up the fight, which was contrary to the testimony of the long-time resident who witnessed the fight. As for Meta, she claimed that she did not mace Felicia, which is contrary to other testimony coupled with the neighbor's observation. Furthermore, the defense witnesses' testimony had other external and internal inconsistencies and could otherwise be judged as lacking credibility.
¶{28} The judging of the various witnesses' credibility here is properly left to the trial court. There is no indication of a manifest miscarriage of justice or exceptional circumstances requiring our intervention. We conclude that the trial court did not lose its way in believing Felicia and finding appellant guilty. Hence, this assignment of error is overruled
¶{29} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1